# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter Rojas, : 
              Appellant : 
               : 
        v. : No. 1451 C.D. 2019
             : SUBMITTED: April 24, 2020
Lehigh County Office of the : 
District Attorney : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                  FILED: July 16, 2020

Peter Rojas (Rojas), *pro se*, appeals from an order of the Court of Common Pleas of Lehigh County (trial court). The trial court denied and dismissed Rojas's appeal from a decision of the Right to Know Appeals Officer (Appeals Officer) for the Lehigh County District Attorney's Office (DA) upholding the DA's denial of Rojas's request for information under the Right-to-Know Law (RTKL).[1] The DA determined the requested information was exempt from disclosure under Section 708(b)(16) and (17) of the RTKL, 65 P.S. § 67.708(b)(16) (records "relating to or resulting in a criminal investigation") and (17) (records "relating to a noncriminal investigation"), and was also prohibited from disclosure under Section 9106(c)(4) of the Criminal History Record Information Act (CHRIA), 18 Pa. C.S. § 9106(c)(4) (precluding disclosure of "investigative and treatment information" from criminal

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101 – 67.3104.

justice system records, except to "a criminal justice agency which requests the information in connection with its duties . . ."). After thorough review, we affirm the trial court's order.

## I. Background

Rojas is an inmate at a state correctional institution. In March 2019, he submitted an RTKL request to the DA seeking a video recording made by the Allentown Police Department (Police) in May 2009. Original Record (O.R.), Item #4, Ex. A-1. The video purportedly showed a Police interrogation of Rojas in which he gave a confession that was later introduced in court at his criminal trial. The DA, through its Right to Know Officer, denied the request because it sought investigative information that was exempt from disclosure under the RTKL and prohibited from disclosure under CHRIA. O.R., Item #4, Ex. C-1.

Rojas appealed from the DA's determination. O.R., Item #4, Ex. A-2. The Appeals Officer[2] upheld the DA's denial of the information request. *See* O.R., Item #15 (trial court's opinion pursuant to Pa. R.A.P. 1925(a)).[3]

Rojas next appealed the Appeals Officer's decision to the trial court. O.R., Item #4. After reviewing the record, the trial court issued an order in August 2019 denying and dismissing Rojas's appeal.[4] O.R., Item #10. In a footnote to its order,

---

[2] Rojas initially directed his appeal to the Office of Open Records (OOR), which transferred the appeal to the Right to Know Appeals Officer (Appeals Officer) for the Lehigh County District Attorney's Office (DA). *See* Original Record (O.R.), Item #4, Ex. A-4. Neither party challenges the propriety of the OOR's transfer of that appeal.

[3] The Appeals Officer's decision itself is not in the record. However, neither party challenges the trial court's statement that the Appeals Officer denied and dismissed Rojas's appeal.

[4] Rojas alleges the trial court initially scheduled a status conference for October 2019, but then, without waiting for the scheduled conference, issued an order denying and dismissing Rojas's

2

the trial court opined that the requested information was exempt from disclosure under the RTKL, 65 P.S. § 67.708(b)(16)(ii), as a custodial interrogation related to a criminal investigation. The trial court found: "Police or other law enforcement documentation of information received by alleged suspects is considered criminal investigative information exempted from disclosure under the RTKL." O.R., Item #10 (citing *Pa. State Police v. Grove*, 161 A.3d 877, 392-893 (Pa. 2017)). "Such records remain exempt from disclosure even after the investigation is completed." *Id.* (citing *Burros v. Martin*, 92 A.3d 1243, 1250 (Pa. Cmwlth. 2014)).

In addition, the trial court concluded the requested information was prohibited from disclosure under CHRIA. The trial court found the police interrogation video constituted investigative information. *See id.* (citing 18 Pa. C.S. § 9102 (investigative information is material obtained as a result of any inquiry regarding a criminal incident or allegation of criminal wrongdoing)). Noting that Rojas is not a member of a criminal justice agency, the trial court determined the interrogation video was precluded from release to him under the CHRIA, and as a result, was also exempted from disclosure under Section 305(a)(3) of the RTKL, 65 P.S. § 67.305(a)(3). O.R., Item #10.

Rojas then appealed to this Court.

## II. Issues

On appeal,[5] Rojas asserts several arguments, which we reorganize and paraphrase for clarity as follows:

---

appeal. Although the trial court docket does not reflect the scheduling of a status conference, an October 3, 2019 notation on the docket does indicate that a status conference was cancelled.

[5] This Court's review of an appeal in a Right-to-Know Law (RTKL) matter is limited to determining whether the trial court committed an error of law and whether its findings of fact were supported by substantial evidence. *California Borough v. Rothey*, 185 A.3d 456, 462 n.6 (Pa.

1.     The trial court committed legal error and abused its discretion by finding the requested information was exempt from disclosure under the RTKL, without requiring the DA to sustain its burden of proving exemption from disclosure. The DA offered no evidence to sustain its burden, and its mere statements of law were not sufficient to sustain its burden of proof. The trial court also improperly issued its decision without conducting a status conference, which it had already scheduled, and at which Rojas would have been able to explain and argue his position.

2.     The trial court acted arbitrarily by finding the primary purpose of the video was criminal investigation. According to a written Police policy, the purpose of video recordings was to document Police conduct during interrogations (rather than to document information related to a criminal investigation), and the trial court admitted the Police also use such video recordings for training purposes. In this regard, the trial court misapplied the analysis of *Grove*, 161 A.3d 877. At a minimum, the trial court should have ordered redaction of the audio portion of the recording and production of the video portion.

3.     The video, which was introduced in court, was also subject to disclosure as a record of a judicial agency. The trial court erred by determining that only financial records of a judicial agency are subject to disclosure.

4.     The trial court acted unreasonably in finding that CHRIA prohibited disclosure of the video as a matter of law.

---

Cmwlth. 2018) (citing *Paint Twp. v. Clark*, 109 A.3d 796, 803 n.5 (Pa. Cmwlth. 2015)). However, construction of the RTKL is a question of law over which this Court exercises plenary, *de novo* review. *California Borough*, 185 A.3d at 462 n.6 (citing *Hearst Television, Inc. v. Norris*, 54 A.3d 23, 29 (Pa. 2012)).

4

## III. Discussion

## A. Burden of Proving Exemption from Disclosure

Rojas argues the trial court committed legal error and abused its discretion by finding the video he requested from the DA was exempt from disclosure under the RTKL. Rojas asserts the trial court failed to hold the DA to its burden of proving an exemption from disclosure under the RTKL. Rojas contends the DA could not sustain that burden solely with statements of law; rather, the DA had to offer evidence, but did not do so. Rojas also reasons that because the trial court scheduled a status conference, it acted improperly when it then issued a decision without waiting to conduct that conference. Rojas suggests if he had been able to participate in the status conference as scheduled, he could have explained and supported his position. We discern no merit in these arguments.

The DA is a local agency for RTKL purposes. *Pennsylvanians for Union Reform v. Centre Cty. Dist. Att'y's Office*, 139 A.3d 354, 356 (Pa. Cmwlth. 2016). Section 302 of the RTKL requires a local agency to provide access to public records upon request. 65 P.S. § 67.302.

Section 102 of the RTKL defines a "record" as:

[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

65 P.S. § 67.102. The video recording Rojas seeks is a "record" as defined in the RTKL.

5

Section 102 of the RTKL defines a "public record" as a "record, including a financial record, of a Commonwealth or local agency that: (1) is not exempt under section 708 [of the RTKL, 65 P.S. § 67.708]; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." 65 P.S. § 67.102. Under Section 708(a)(1) of the RTKL, a local agency denying a record request has the burden of establishing by a preponderance of the evidence that the requested record is exempt from public access and therefore not a public record. *See* 65 P.S. § 67.708(a)(1).

Section 708(b)(16)(ii) of the RTKL exempts from disclosure any agency record "relating to or resulting in a criminal investigation," including "[i]nvestigative materials, notes, correspondence, videos and reports." 65 P.S. § 67.708(b)(16)(ii). The RTKL does not define the phrase "criminal investigation," but our Supreme Court has observed that the term "clearly and obviously refers to an official inquiry into a possible crime." *Grove*, 161 A.3d at 893.

Applying these definitions here, the video at issue undisputedly documented the Police's interrogation of Rojas as part of a criminal investigation of a death. Although Rojas argues the DA was required to offer evidence rather than merely legal assertions in order to sustain its burden of proof, he fails to explain what evidence was required beyond this undisputed fact.

Similarly, despite his assertion that he should have been allowed to offer evidence or arguments at a status conference before the trial court issued its decision, Rojas offers no description of what evidence or arguments he would have offered or how he believes they would have impacted the trial court's decision. In fact, the record provides no support for Rojas's assertion that he would have been allowed to offer either evidence or arguments at a status conference. Assuming he could have

6

done so, however, and further assuming he would have presented in the trial court the same arguments he makes on appeal to this Court, they would not have altered the outcome in the trial court, for all the reasons stated herein.

The trial court did not err in concluding the video was exempt as a matter of law from disclosure under the RTKL.

### B. Purpose of the Video at Issue

In a related argument, Rojas contends the trial court erred in finding that a criminal investigation was the primary purpose of the video. He argues that because the primary purpose of the video was not related to a criminal investigation, the video was not exempt from disclosure. This argument, too, lacks merit.

Rojas points to a written Police policy requiring documentation of "the conduct of interrogations and recording of confessions. . . ." Br. of Appellant, Ex. B at 5.[6] Rojas asserts that under this policy, video recordings are used to document Police conduct during performance of interrogations, rather than the interrogations themselves. We believe that in the context of the policy, the word "conduct" is not used in the sense of documenting *behavior* by officers of the Police, but rather, in the sense of documenting that the interrogation was *performed*. In either event, however, the policy statement relates to documentation of a criminal investigation, which is exempt from disclosure under the RTKL.

Rojas also contends the trial court "admitted" the video was used for training purposes. Br. of Appellant at 10. This is a mischaracterization of the trial court's

---

[6] We note that Exhibit B to Rojas's brief includes several pages that are not part of the record. We do not consider any information outside the record. Pa. R.A.P. 1921 & Note; *HYK Constr. Co. v. Smithfield Twp.*, 8 A.3d 1009, 1016-17 (Pa. Cmwlth. 2010); *see also Sanders v. Workers' Comp. Appeal Bd. (Marriott Corp.)*, 756 A.2d 129, 133 (Pa. Cmwlth. 2000) (briefs are not part of the record and appellate court may not consider facts outside the record). However, page 5 of Exhibit B to Rojas's brief is part of the record. *See* O.R., Item #4, Ex. B-2.

statement. In a footnote to its order, the trial court observed, in part: "*Whether* the interrogation video can be used by the [Police] for other purposes not related to criminal investigation, *like training*, *does not change the primary use of the video* at issue which is to investigate an incident which ultimately resulted in the filing of charges against [Rojas]." O.R., Item #10 at 1-2 n.1 (emphasis added). Thus, the trial court did not find the video was used for training purposes; rather, the trial court merely commented that any potential additional uses of the video did not alter its primary purpose of documenting a criminal investigation.

In his alternative argument, Rojas insists that even if the audio portion of the recording constituted documentation of a criminal investigation, the video portion did not. Based on the analysis in *Grove*, Rojas reasons the trial court here should have ordered redaction of the audio portion of the recording and production of the video portion.[7] We do not reach the merits of this argument.

---

[7] In *Pennsylvania State Police v. Grove*, 161 A.3d 877 (Pa. 2017), the requester sought access to two mobile video recordings relating to a traffic accident. The recordings were generated automatically when police officers responded to the accident scene. The Pennsylvania State Police denied the request for the recordings, claiming they were exempt as investigatory records. The OOR sustained the requester's appeal, and the State Police sought judicial review. The State Police argued the recordings were criminal investigative records because they depicted a vehicle accident that resulted in traffic citations, which are summary criminal offenses.

Ultimately, affirming a decision of this Court, our Supreme Court held the recordings were not *automatically* exempt from disclosure as criminal investigative records under Section 708 of the RTKL or under CHRIA. Rather, the State Police had the burden of establishing that the recordings were investigative records, a determination our Supreme Court concluded must be made on a case-by-case basis. *Id.* at 894.

Our Supreme Court found the video components of the recordings in *Grove* were not exempt from disclosure, because they did not depict the accident itself. They showed only the state troopers at the accident scene, interacting with drivers and bystanders. *Id.* Further, the State Police acknowledged in *Grove* that the information for the criminal citations did not come from the recording, but from witness interviews. Accordingly, the video portions of the recordings were subject to disclosure under the RTKL. *Id.*

As the trial court correctly found, and as the DA correctly observes, Rojas did not raise this alternative argument for the first time until his statement of issues on appeal pursuant to Pa. R.A.P. 1925(b), after he filed his notice of appeal from the trial court's order. *See* O.R., Item #15 (trial court's opinion pursuant to Pa. R.A.P. 1925(a), observing that Rojas first raised his redaction argument in his statement of issues pursuant to Pa. R.A.P. 1925(b)); Item #4 (appeal to trial court from decision of DA's Appeals Officer affirming DA's denial of records request); Item #4, Ex. A-2 (appeal from initial denial of information request). Therefore, he has failed to preserve this issue for our review. *Orange Stones Co. v. City of Reading*, 32 A.3d 287, 291 (Pa. Cmwlth. 2011) ("issues not raised before the trial court cannot be raised for the first time on appeal or in a Rule 1925(b) Concise Statement of [Errors Complained of] on Appeal"). Accordingly, the issue is waived.

## C. Judicial Agency Records

Rojas next asserts the video was subject to disclosure as a judicial agency record, and the trial court erred in concluding that disclosure of judicial agency records is limited to financial records. We disagree.

As set forth above, the DA is a local agency, not a judicial agency. *Pennsylvanians for Union Reform*, 139 A.3d at 356; *see also Miller v. Cty. of Centre*, 173 A.3d 1162, 1163-64 (Pa. 2017). Accordingly, its records are not judicial agency records.

To the extent Rojas suggests the video is a judicial agency record because of its introduction in court[8] at his criminal trial, that argument is irrelevant. He is not seeking the video from the trial court. Even if he were, the limitation of disclosure of judicial records to production of financial records would still prevent disclosure

---

[8] A court is a "judicial agency" as defined by Section 102 of the RTKL. 65 P.S. § 67.102.

of the video. *See Miller*, 173 A.3d at 1163 ("[u]nder the RTKL, only the financial records of a judicial agency are subject to disclosure in response to RTKL requests") (citing Section 304 of the RTKL, 65 P.S. § 67.304). The trial court's finding on that issue was correct.

### D. CHRIA's Prohibition of Disclosure

Finally, Rojas argues the trial court erred in finding that CHRIA precluded the DA from producing the video in response to the RTKL request. Rojas's argument is without merit.

CHRIA, in pertinent part, governs the dissemination and disclosure of criminal history record information. Specifically, Section 9106(c)(4) of CHRIA prohibits disclosure of "investigative information" except to criminal justice agents and agencies:

> Investigative and treatment information shall not be disseminated to any department, agency or individual unless the department, agency or individual requesting the information is a criminal justice agency which requests the information in connection with its duties, and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print or other identifying characteristic.

18 Pa. C.S. § 9106(c)(4).

Section 9102 of CHRIA defines "investigative information" as "[i]nformation assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing. . . ." 18 Pa. C.S. § 9102. The word "assemble," in this context, means to "'bring or gather together into a group or whole.'" *California Borough v. Rothey*, 185 A.3d 456, 467 (Pa. Cmwlth. 2018) (quoting *Pa. State Police v. Kim*, 150 A.3d 155, 160 (Pa. Cmwlth. 2016); citing Am. Heritage Dictionary 134 (2nd Coll. ed. 1985)).

Section 9102 of CHRIA defines a "criminal justice agency" as:

[a]ny court, including the minor judiciary, with criminal jurisdiction or any other governmental agency, or subunit thereof, created by statute or by the State or Federal constitutions, specifically authorized to perform as its principal function the administration of criminal justice, and which allocates a substantial portion of its annual budget to such function. Criminal justice agencies include, but are not limited to: organized State and municipal police departments, local detention facilities, county, regional and State correctional facilities, probation agencies, *district or prosecuting attorneys*, parole boards, pardon boards, the facilities and administrative offices of the Department of Public Welfare that provide care, guidance and control to adjudicated delinquents, and such agencies or subunits thereof, as are declared by the Attorney General to be criminal justice agencies as determined by a review of applicable statutes and the State and Federal Constitutions or both.

18 Pa. C.S. § 9102 (emphasis added). Thus, the DA is a criminal justice agency.

In *California Borough*, information routinely recorded on a holding cell surveillance video showed an altercation between a police officer and an arrestee awaiting arraignment. As part of a criminal investigation into the police officer's conduct, the police chief downloaded the information stored on the video and gave it to the district attorney for evaluation. This Court concluded the police chief thereby "assembled" criminal investigation information within the meaning of CHRIA. *California Borough*, 185 A.3d at 467. Consequently, CHRIA precluded disclosure of the video to an individual requester. *Id.*

Here, the trial court correctly determined that the video of Rojas's interrogation by Police was investigative. Indeed, Rojas does not dispute that it related to an "inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing." 18 Pa. C.S. § 9102. Although the record does not expressly demonstrate that the Police provided a copy of the video to the DA, Rojas does not explain how it would otherwise be in the DA's possession for presentation as evidence at his trial, and Rojas neither contends nor cites authority suggesting that

11

he could compel the DA to produce information *not* in its possession. Therefore, as in *California Borough*, the Police here presumably "assembled" investigative information within the meaning of 18 Pa. C.S. § 9106(c)(4) by providing the information on the video to the DA for review. Accordingly, the restriction on disclosure set forth in Section 9106(c)(4) of CHRIA was applicable.

Contrary to Rojas's assertion, he is not a criminal justice agency as defined in Section 9102 of CHRIA, nor is he rendered such by his *pro se* status. Rather, he is an individual litigating an information request *against* a criminal justice agency, the DA. Nothing in the definition of a criminal justice agency suggests that it includes an agency's opposing party in an administrative proceeding. *See* 18 Pa. C.S. § 9102.

Under Section 102 of the RTKL, information restricted from disclosure under another state law is not a public record subject to disclosure under the RTKL. 65 P.S. § 67.102. The trial court correctly found that CHRIA prohibited the DA from releasing the video to any person other than a criminal justice agency. Accordingly, the video was not subject to disclosure in response to Rojas's RTKL request.

## IV. Conclusion

Based on the foregoing analysis, we conclude that the DA correctly refused to produce the video of Rojas's interrogation by Police. We affirm the trial court's order denying and dismissing Rojas's appeal from the Appeals Officer's decision upholding the DA's determination.

_____
ELLEN CEISLER, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter Rojas,
        Appellant

    v.

Lehigh County Office of the
District Attorney

:
:
:
: No. 1451 C.D. 2019
:
:
:

# **O R D E R**

AND NOW, this 16th day of July, 2020, the order of the Court of Common Pleas of Lehigh County is AFFIRMED.

_____
ELLEN CEISLER, Judge